HICKOX *vs.* TALLMAN and WILLIAMS.

There can be no vested right in a mere rule of evidence. Nor has the grantee in a deed from the comptroller, of land sold for taxes, while the act of 1850 (*chap.* 183) was in force, any vested right to the benefit of the presumptions in respect to the regularity of the sale and of all the proceedings prior thereto authorized by that statute to be drawn in his favor.

Accordingly *held* that it was competent for the legislature, by the act of 1855, (*Laws of* 1855, *chap.* 427,) to repeal the act of 1850, and thus provide that deeds executed by the comptroller while the latter act was in force should not be thereafter presumptive evidence of the regularity of the proceedings.

*Held also,* that that result had been attained, by the act of 1855, and that there is now no statute relieving grantees of the comptroller under deeds executed prior to 1855, from making proof of every fact necessary to give the comptroller jurisdiction to execute the conveyance.

It is competent for the legislature to change the burthen of proof, in a given case, from one party, and cast it upon another; no rule of evidence at common law being changed.

THIS was an appeal from a judgment entered on the re-port of a referee.

The action was on a covenant of warranty and for quiet enjoyment, contained in a deed given by the defendants to the plaintiff, bearing date December 1, 1849. The eviction com-

Hickox *v.* Tallman.

plained of was under a comptroller's deed, given pursuant to the statute, on a sale of a portion of the premises conveyed to the plaintiff as aforesaid, for unpaid taxes, to one Olcott, bearing date the 22d February, 1851. Olcott conveyed to one Steele, who entered and took possession of the portion of the premises sold by the comptroller. The sale by the comptroller was in 1848, and was for taxes for the years 1840, 1841, 1842, 1843 and 1844.

On the trial the plaintiff proved the deed from the defendants to him, the deed from the comptroller to Olcott, reciting his proceedings to sell the land therein described, for unpaid taxes, and his sale of said lands, the conveyance from Olcott to Steele, and the consideration paid by the plaintiff to the defendants for said land. He also attempted to prove the proceedings of the assessors and supervisor in assessing and levying said taxes, and of the collectors in returning the warrants issued for the collection thereof. But he failed to prove the regularity of such proceedings. The referee held the comptroller's deed no evidence of the regularity of the proceedings of the town and county officers in assessing &c. said taxes, and ordered judgment for the defendants.

*J. Noxon,* for the appellant.

*Mr. Hiscock,* for the respondents.

*By the Court,* MULLIN, J. The deed under which the plaintiff claims title is dated 1st December, 1849, and was recorded the 22d March, 1855. The deed under which the person claiming title to the portion of the land described in the plaintiff's deed, and from which the plaintiff claims to have been ousted, is dated 22d February, 1851, from the comptroller to Olcott, on a sale for unpaid taxes. The plaintiff insisted, before the referee, that the deed from the comptroller was *prima facie* evidence that the comptroller had power to sell, and of the regularity of the sale. The referee held and decided that the deed was not presumptive evidence

that the sale, and all proceedings prior thereto, were regular. This is the principal question presented by the appeal, and if the ruling of the referee was erroneous a new trial must be granted.

Section 81, chapter 13, title 3, article 3, of the first part of the revised statutes as amended by chapter 183 of the laws of 1850, reads as follows : " Such conveyance (the comptroller's deed pursuant to a sale for unpaid taxes) shall be executed by the comptroller, &c., and every conveyance of land sold for taxes heretofore or hereafter executed by the comptroller, either in his own name or in the name of the people of this state, shall be presumptive evidence that the comptroller had authority to sell and convey the land described in it for arrears of taxes charged thereon, and that all proceedings, things and notices required by law to be had, done or given prior to the execution of such conveyance · by the comptroller, have been had and done as required by law, but such presumption may be rebutted by legal evidence." It is quite clear that if this statute was in force the deed would be presumptive evidence of the regularity, not only of the sale but of all proceedings prior thereto, which the law required to be had in order to authorize a sale. But section 92 of chapter 427 of the laws of 1855 repeals chapter 183 . of the laws of 1850, and enacts as follows : " § 65. Such conveyance shall be executed by the comptroller, &c., and all conveyances hereafter executed by the comptroller, of lands sold by him for taxes, shall be presumptive evidence that the sale and all proceedings prior thereto, from and including the assessment of the land, and all notices required by law to be given previous to the expiration of the two years allowed to redeem, were regular according to the provisions of this act, and all laws requiring or directing the same or in any manner relating thereto."

It will be observed that this section does not apply to conveyances executed before its passage ; and as the deed in question in this case was executed before the passage of that

section, it is not within its provisions, and it is not necessary therefore to inquire whether it is made evidence for any purpose, under that statute.

The law of 1850 being repealed, there is either no provision of law in force declaring the effect of a comptroller's deed as evidence, or the provisions of the revised statutes are revived, or the act of 1850 must be considered in force as to all comptrollers' deeds executed prior to 1855; because, as it is contended, the legislature could not take away from parties deriving title under such deeds the benefit of laws then in force giving them effect as evidence; that the right to have the deed *prima facie* evidence of the regularity of the proceedings was vested, and could not be taken away by a repeal of the law. If the act of 1855 had simply repealed the act of 1850, there would be some reason for holding that the provisions of the revised statutes declaring the effect of the comptroller's deed as evidence were revived; but the act of 1855 not only repeals the act of 1850, but it makes provision as to the effect of such deeds thereafter executed as evidence. Under these circumstances it seems to me that we must hold that there is now no statutory provision in relation to deeds executed prior to the passage of the act of 1855; unless the repealing clause is void so far as it affects deeds executed prior to its passage.

If the act of 1855 had merely enacted the provision contained in § 95 of that statute, the statute of 1850 would have been repealed by implication, and being thus repealed, deeds executed prior to 1855 would have been left to be regulated by the act of 1850; but the latter statute and all laws inconsistent with the provisions of the act of 1855 are expressly repealed. (*See Laws of* 1855, *ch.* 427, § 92.)

If it was competent for the legislature to repeal the act of 1850, so that deeds executed while it was in force should not be thereafter presumptive evidence, it seems to me that result has been attained, and there is now no statute relieving the grantees of the comptroller from making proof of every fact

necessary to give him jurisdiction to execute such a convey-ance. The act of 1850, above cited, merely relieves the grantees of land sold for taxes from proving certain facts, which by law he would be bound to prove, had the statute not been passed, and it casts the burthen of disproving the facts presumed, upon the party not before bound to make such proof. The statute of 1855 which repeals the act of 1850, does not impair or lessen the effect of the deed from the comptroller as evidence of the matters contained in it. Its force as common law evidence remains the same after as before the statute. The presumptions which the statute of 1850 authorized to be drawn from the deed are swept away, and this is the only effect of the act. The question then comes to this: Is it competent for the legislature to change the burthen of proof in a given case from one party and cast it upon another, no rule of evidence at common law being changed? It seems to me that it is. The only limitation on the power of the legislature in cases of this kind is, that it shall not destroy or impair vested rights. Can it be said that the grantee of the comptroller, under a grant executed while the act of 1850 was in force, has a vested right to the pre-sumptions which that act required to be drawn in his favor, as to the regularity of the proceedings on which it rested? It seems to me not. It was a great hardship to compel a pur-chaser of lands, sold for taxes, to prove the regularity of all proceedings required by law in the levying and collection of the tax prior to the execution of the deed. A title acquired, resting on such proceedings, would be almost valueless; and no person would be likely to purchase at a comptroller's sale who did not desire to spend the remainder of his days in lit-igation. It was an act of duty, as well to purchasers as to the state, to relieve purchasers from the trouble and expense of proving the proceedings to levy and collect the tax. And it may be conceded that it is unjust to repeal such a law, and thereby in many cases render totally worthless the title which the state professed to pass by the deed. But the question is

Hickox *v.* Tallman.

one of power, not of policy. If, under a statute similar to that of 1850, rights became vested so as to preclude the right to repeal, it is difficult to imagine a statute under which rights will not become vested, and thus an end be, put to the repeal of statutes. If a statute forbids an act and gives a penalty for its violation to an individual or corporation; it would seem that a right to the penalty had become vested ; especially so after an action had been brought for its recovery, and expenses incurred. Yet it is well settled that it is competent for the legislature to repeal the law, and all rights under it will be taken away. (*Smith on Statutes*, 892 *et seq. Butler* v. *Palmer*, 1 *Hill*, 330, *and cases cited.*) So of a statute which takes away a right of appeal. (*Grover* v. *Coon*, 1 *Comst.* 536.) So also where a s tatute shortens the time for redemption. (*Butler* v. *Palmer*, 1 *Hill*, 330.) In the case last cited, Justice Cowen says : " I know that rights of action and other executory rights arising under a statute are said to be vested * * * ; they are so, and a subsequent statute ought not to repeal them, though it may do so by express words, unless they amount to a contract, within the meaning of the constitution. But that being out of the way, and the statute being simply repealed, the very stock on which they were grafted is cut down, and there is no rule of construction under which they can be saved."

There is no shadow of ground for holding the grantee in a deed from the comptroller, of land sold for taxes, after the passage of the act of 1850, to have a vested right to the benefit of the presumptions provided for by that statute. The clause of the statute under consideration was remedial merely, and there is no reason why such statutes may not be repealed by the legislature. I will not say no case can arise in which rights will vest under such statutes, thus precluding an appeal ; but the cases must be very rare indeed, and I am quite clear that this is not one of them. The case of *Jackson* v. *How* (19 *John.* 80) has been cited to us, and is the only case which the counsel for the plaintiff has been able to find giv-

ing color to the proposition he is bound to maintain in order to support his action. In that case the plaintiff offered in evidence a patent from the state to Col. Lewis Atayaghrongton, for the premises in question, dated 29th January, 1792; also an exemplification of the record of a deed from the patentee to one Van Slyck, dated April 21, 1792, which had been duly acknowledged on the 14th of May, 1792, and recorded in Cayuga county, January 22, 1814. This exemplification was objected to by the defendants' counsel. The plaintiff then produced the original deed, taken from the files of Cayuga county, which was proved to have been duly deposited in the office of the secretary of state, with certificate of acknowledgment and a certificate of its being recorded in the office of the secretary of state. This was also objected to. By the 7th section of an act of 12th of April, 1813, it was provided that every conveyance acknowledged prior to the 6th of April, 1801, agreeably to any act in force at the time of such acknowledgment, and not recorded, should be entitled to be recorded, and that every deed so acknowledged, whether recorded or not, or the record thereof or a transcript of such record, might be read in evidence. By an act of the 4th of February, 1814, no deed relating to the title of lands granted as bounty lands to officers, &c. who served in the army of the United States, executed before the 1st of May, 1797, should be thereafter registered or recorded, unless acknowledged according to the provisions of the 1st section of the act of the 12th of April, 1813, any thing in section 7 of that act to the contrary notwithstanding. An act of the 14th of April, 1820, declared that unless a deed was acknowledged according to the 1st section of the act of the 12th of April, 1813, it should not be read in evidence. The deed to Van Slyck had been acknowledged in accordance with the law in force at the time of its acknowledgment, and by the very terms of the act of 1813 the deed, the record thereof, and a transcript of its record, were evidence of the contents of such deed. The acts of 1814 and 1820 did not in terms repeal the act of 1813,

Hickox v. Tallman.

nor did those acts in terms apply to deeds acknowledged before the passage of the act of 1814. The question there was whether the court would allow the acts of 1814 and 1820 to have a retrospective effect, and take away from parties rights acquired under the previous statutes, or whether they would construe its provisions as prospective merely, and thus avoid the mischief which must have resulted from the other construction. The court very wisely held, in accordance with the well settled rules of construction of statutes, that the acts of 1814 and 1820 must be held to be prospective, and as not affecting deeds acknowledged and recorded prior to their passage. That case is not at all like this; nor is there any principle decided in it affecting the case in hand. Were it not that the act of 1850 was repealed by the act of 1855, the latter act would by its terms operate prospectively only; but when it repeals the act of 1850 it closes the door against construction, and leaves to the courts no other duty than to yield to its provisions.

It is suggested by the learned justice delivering the opinion in *Jackson* v. *How*, whether it was competent to the legislature to enact that public records should not be admitted as evidence of the transactions regularly and legally recorded; that as to purchasers the record is part of the title, and an act which would declare the record inadmissible in evidence would obliterate their title, would impair not only a vested right, but would impair and destroy the foundation of the contract between the parties. I should hesitate a long time before I would admit the power in the legislature to declare that a record of judgment or of a deed duly acknowledged and recorded should not be evidence. But whether or not it should be held within the power of the legislature to so legislate, it does not reach this case. The repeal of the act of 1850 does not impair the force of the deed as evidence of the contract between the parties. That is left to speak for itself, as perfectly as if that act had never been passed. The presumptions which that act declared should thereafter be drawn

from the deed, when proved, are swept away. There can be no vested right in a mere rule of evidence.

For these reasons I think the referee was right in holding the deed not evidence of the regularity of the proceedings to levy or collect the tax. It cannot be claimed that if the deed is not evidence of the proceedings referred to, there is any legal proof of them before the court.

It will be exceedingly burdensome to parties to be compelled to make proof of the proceedings required by law in levying and collecting taxes, in order to give validity to a comptroller's deed; but it was for the legislature to leave purchasers at tax sales subject to this legal obligation, however onerous or unjust it may prove to be. I think such parties are thus left, and they must look to the legislature, and not to the courts, for relief.

The judgment of the referee must be affirmed.

Judgment affirmed.

[ONONDAGA GENERAL TERM, October 2, 1860. *Allen, Mullin* and *Morgan,* Justices.]