## MARX v. HANTHORN.

### (*Circuit Court, D. Oregon.* April 20, 1887.)

1. **TAXATION—SALE—DEED—SHERIFF.**
   The sheriff in office is the proper person to make a deed to property sold for delinquent taxes, on the failure of the owner to redeem the same.

2. **SAME—DEPUTY-SHERIFF.**
   A deputy-sheriff may execute a deed to property sold for delinquent taxes, and when he does do so he should execute and acknowledge the same for and in the name of his principal.

3. **SAME—REGULARITY OF SALE—DEED AS EVIDENCE—CONSTITUTIONAL LAW.**
   The legislature may make a tax deed conclusive evidence of the regularity of the prior proceedings, so far as they rest in the discretion of the legislature, and an omission to perform them may subsequently be cured or excused by it; but it cannot make such deed more than *prima facie* evidence of the performance of any act, or of the existence of any fact, essential to the validity of the transaction; and to do so would be to deprive the party of his property without due process of law, contrary to the fourteenth amendment.

4. **SAME—NOTICE OF SALE—NAME OF OWNER.**
   Reasonable notice of the sale of real property for delinquent taxes is an essential part of the proceeding to deprive the owner of his title thereto, and the legislature cannot make the tax deed conclusive evidence of the fact that the same was duly given; and the name of the owner, when known and entered on the assessment roll, is a material part of such notice.

5. **SAME—CONTRACT OF STATE—IMPAIRING.**
   Where a person purchases real property at a sale for delinquent taxes, under a statute which makes the tax deed conclusive evidence of the regularity of the prior proceedings, with certain exceptions, the legislature, as to any fact or matter of which it had the power to make the deed conclusive evidence, cannot thereafter make the same only *prima facie* evidence thereof, without impairing the obligation of the contract of the state with the purchaser of the property.

6. **SAME—THE CASE.**
   Lots 3 and 4, in block E, in Portland, were assessed for taxation to the owner, Ida F. Hanthorn, and so transcribed onto the tax roll, on which the taxes then levied on the property were extended. The taxes were returned delinquent, and the property entered on the delinquent tax-roll as that of Ida J. Hawthorn, and in due time so advertised and sold, and a certificate of the sale given to the purchaser. The property not being redeemed at the expiration of two years, the sheriff made a deed thereof to the purchaser, in which the prior proceedings were represented as having been had and done concerning the property of Ida F. Hanthorn. The grantee of the purchaser afterwards brought an action against Hanthorn to recover the possession of the premises. *Held* that the defendant, notwithstanding the statute in force at the date of the sale and deed, making the latter conclusive evidence of the

regularity of the prior proceeding, as to the notice of the sale, might show that the property was advertised and sold as that of Hawthorn instead of Hanthorn, and thereby avoid the deed.

*(Syllabus by the Court.)*

At Law. Action to recover possession of real property.
*W. Scott Beebe* and *John W. Whalley*, for plaintiff.
*George W. Durham* and *F. A. E. Starr*, for defendant.

DEADY, J. This action is brought by the plaintiff, a subject of the emperor of Germany, against the defendant, a citizen of Oregon, to recover the possession of lots 3 and 4, in block E, in the town of Portland. The action was originally brought against B. Campbell, the party in possession, who having answered that he was in possession as the tenant of Ida J. Hanthorn, the latter was substituted for him as defendant. It is alleged in the complaint that the plaintiff is the owner of the premises, and that the defendant wrongfully withholds from him the possession thereof. The answer contains a denial of the allegations of the complaint, and a plea of title in the defendant with a right to the possession, and the replication denies the plea. The defendant claims the premises under a deed of August 28, 1878, from W. W. Chapman and Margaret F., his wife, the latter being the patentee of the United States, under the donation act of 1850, of a tract of land, including said block E. The plaintiff claims under two deeds, one from ex-Sheriff Sears of July 29th, and the other from Sheriff Jordan of July 30, 1886, each purporting to be made in pursuance of a sale of the property for taxes by the former on June 30, 1884. By a stipulation filed in the cause it is admitted that the defendant was the owner in fee of the premises at the time of the assessment and sale of the same for taxes, and that she is still such owner, unless such sale and the conveyance thereon had the effect to pass the title to the. purchaser thereat; and that the property is worth $6,000. The case was tried by the court without the intervention of a jury, and on the trial the proceedings constituting the assessment, levy of taxes, and the sale of the property, and the conveyance thereon, were received in evidence, subject to objection for want of competency and materiality.

From these it appears that on August 27, 1883, the premises were listed by the assessor of Multnomah county on the assessment roll thereof, for taxation in that year, as the property of Ida F. Hanthorn, and valued at $2,200; that on October 17, 1883, the entry on the assessment roll concerning said property was transcribed onto the tax-roll of said county by the clerk thereof, and on the same day the taxes for school, state, and county purposes, amounting to $34.32, were levied on said property, and extended on said tax-roll, by the county court of said county, and the sheriff thereof commanded, by a warrant indorsed thereon, signed by the county clerk and sealed with the seal of said court, to collect said taxes by demanding payment of the same, and making sale of the goods and chattels of the person charged therewith; that the sheriff, George C. Sears, to whom said warrant was directed,

having returned that the tax levied on said property was unpaid and delinquent, the latter was on April 22, 1884, entered on the delinquent tax-roll of said county by the clerk thereof, as the property of Ida F. Hawthorn, and a warrant indorsed thereon, signed by said clerk and sealed with the seal of said county, commanding said sheriff to levy on the goods of the delinquent tax-payer, and, in default thereof, on the real property mentioned in said tax-list, or sufficient thereof to satisfy said taxes, charges, and expenses; that afterwards said sheriff returned that he received said delinquent tax-list and warrant on April 22, 1884, and, in pursuance thereof, and in default of personal property, he levied on said lots three and four, and advertised and sold the same on June 18, 1884, as the property of Ida F. Hawthorn, to J. E. Bennett, for $37.51, the amount of said delinquent tax and costs, and expenses thereon; that on July 29, 1886, George C. Sears, as ex-sheriff of said Multnomah county, executed and delivered to said Bennett a deed for the premises, in which the proceedings concerning the assessment of said property, the levy of the taxes thereon, the non-payment and delinquency of the same, and the sale of the property therefor, were substantially recited, except that it does not thereby appear that the premises were entered on the delinquent tax-list, or advertised or sold as the property of Ida F. Hawthorn, but as that of Ida F. Hanthorn; that on July 30, 1886, Thomas A. Jordan, as sheriff of said Multnomah county, by A. W. Witherell, deputy, executed and delivered to said Bennett a deed of the premises, containing the same recitals as the one from Sears.   Each deed was acknowledged on the day of its execution, and afterwards admitted to record.   The original Jordan deed was put in evidence, and also a certified copy of the record.   But the execution of the original was not otherwise proved, and it is contended that the acknowledgment is not legal, and therefore it cannot be read in evidence without direct proof of its execution.

On July 31, 1886, Bennett and his wife, Alvira F., in consideration of $500, as recited in the deed, quitclaimed the premises to the plaintiff.

The deed by Sears, the ex-sheriff, is unauthorized and void.   When he made the sale, and gave the certificate thereof to the purchaser, and returned his proceedings in that respect to the clerk of the county court, the process under which he acted was fully executed.   A sheriff who sells real property on a warrant for the collection of delinquent taxes is not thereby authorized or required to make a formal conveyance thereof to the purchaser, but only to deliver him a certificate of the fact of such sale.   If the land is redeemed within two years thereafter, the effect of the sale ceases, and no further official action is required in the premises. But, in case no redemption is had within that time, the statute (Laws Or. 767, § 90) directs that "the sheriff" shall execute a conveyance to the purchaser or his assigns.   This command is addressed to the "sheriff" then being, and not to any ex-sheriff who may have made the sale two years before.   The conveyance itself is in the nature of a further assurance given by the state in evidence of the fact that a sale of property which was only conditional when made has, by the lapse of time and

the omission of the former owner, become absolute. And the judge or the clerk of the county court might, with equal propriety, have been designated as the person to execute the same.

Nor is it material in this connection that an outgoing sheriff is required (Code Civil Proc. § 986) to "complete the execution of all final process which he has begun to execute," and that a warrant for the collection of delinquent taxes is "deemed an execution against property, * * * and shall be executed and returned in like manner," except as otherwise provided, (Laws Or. p. 766, § 82;) for both a warrant and an execution are fully executed when a sale is made thereon, and a certificate thereof given to the purchaser. The process is then returnable, and nothing more is done on or in pursuance of it. In this state, the sale of property on an execution for the enforcement of a judgment is conditional, not only on redemption by the debtor or any lien creditor, but on the confirmation thereof by the court. Code Civil Proc. §§ 293-301.

The proceedings subsequent to the sale and the return of the process, whether for the enforcement of a judgment or the collection of delinquent taxes, including the deed to the purchaser or redemptioner, are taken in pursuance of the statute in such cases made and provided, and not the process, and are conducted and performed before or by the sheriff then in office.

The supreme court of this state in *Moore* v. *Wallamett T. & L. Co.*, 7 Or. 369, held that the sheriff in office is the proper person to make the deed in pursuance of a sale on execution. "Such a construction of the statute," says Judge BOISE, speaking for the court, "will establish a rule most convenient to the parties; for the sheriff in office can always be found, as his official duties require his presence in the county, while the former sheriff may die, be disqualified, or remove from the county, and render proceedings before him impracticable." Although this decision was made in 1879, no notice is taken by the court of the amendment to said section 986 of the Code, by the act of October 21, 1878, (Sess. Laws, 99,) which adds a proviso to the effect that, when real property is sold under execution, and the sheriff making the sale fails to make a proper deed to the purchaser during his term of office, the court confirming the sale may order the sheriff in office to make such deed, which shall have the same effect as if made by the sheriff who made the sale. In the argument of counsel for appellant, as reported, (page 363,) this amendment is referred to as plainly evidencing that the legislative assembly recognized the law to be such that the sheriff who made the sale must make the deed; and such appears to be the effect of the amendment, except in the cases therein provided for, wherein the court may order the sheriff in office to make the deed. But it is probable, though the fact cannot be definitely ascertained from the report of the case, that the deed in question was made by the sheriff in office before section 986 was amended, and therefore the court treated the amendment as so far non-existent.

But in my judgment section 986, in neither its original nor amended form, has any, or was ever intended to have any, application to a war-

rant for the collection of delinquent taxes. Indeed, the amendment plainly limits the operation of the section to sales on execution for the enforcement of judgments, by the fact that the power to make the order therein provided for, directing a sheriff in office to make a deed, is limited to the court which confirmed the sale,—a proceeding unknown to a sale for delinquent taxes. Property sold for delinquent taxes may be redeemed in two years from the date of the certificate of sale,—a period equal to a sheriff's term of office. Therefore the redemption must occur after the expiration of the term of the sheriff who made the sale. The redemption is a private act which takes place between the parties, by the payment to the purchaser of the purchase money, and a certain per centum thereon in addition. If no redemption is made within the time prescribed, on the application of the party entitled thereto, the statute directs "the sheriff"—not the ex-sheriff or the person who made the sale, but the sheriff then being—to make the deed accordingly.

It is objected that the writing purporting to be the deed of Jordan, the sheriff in office, is not proven. Section 22 of the act relating to conveyances (Laws Or. 518) provides that a conveyance, acknowledged as therein prescribed, "may be read in evidence without further proof thereof," and shall be admitted to record. And by section 27 of the same act (Laws Or. 518) a certified transcript of such record "may be read in evidence * * * with the like force and effect as the original." The deed is executed in the name of "Thos. A. Jordan, sheriff of Multnomah county, Oregon, and tax collector of said county, by A. W. Witherell, deputy." It was acknowledged before the county clerk, and the certificate states that personally appeared before said clerk "the within-named Thos. A. Jordan, by A. W. Witherell, deputy-sheriff" of the county of Multnomah, Oregon, and acknowledged the execution of the deed. By sections 962 and 983 of the Code of Civil Procedure it is provided that "a sheriff may have a deputy," who "has the power to perform any act or duty that his principal has." A deputy is an agent, and, when he performs any act within the scope of his agency or deputyship, he should do so in the name of his principal. In the nature of things, a deed can only be acknowledged by the person who actually signed or executed it. Consequently a deed executed by an agent or deputy must be acknowledged by him. But in so doing he acts for his principal, the same as in the signing or execution of the writing, and therefore he must make the acknowledgment in the name of and for the principal. See *Huey* v. *Van Wie*, 23 Wis. 617; 2 Washb. Real Prop. 573; 1 Jones, Mortg. §§ 130, 533; Freem. Ex'ns, § 327.

The original deed, being properly executed and acknowledged, proves itself, and the transcript from the record thereof does the same.

The effect of the deed remains to be considered. By section 5 of the act of December 18, 1865, (Laws Or. 767, § 90,) it is declared that such a deed "shall operate to convey a legal and equitable title to the purchaser, sold in fee-simple to the grantee named in the deed," whatever that means. But the section also provides that, on the delivery of said deed, "all the proceedings required or directed by law in relation to the

levy, assessment, and collection of the taxes, and the sale of the property, shall be presumed regular, and to have been had and done in accordance with law; and such deed shall be *prima facie* evidence of title in the grantee, and such presumption and such *prima facie* shall not be disputed or avoided except by proof of either (1) fraud in the assessment or collection of the tax; (2) payment of the tax before sale, or redemption after the sale; (3) that the payment or redemption was prevented by the fraud of the purchaser; (4) that the property was sold for taxes for which the owner of the property at the time of the sale was not liable, and that no part of the tax was levied or assessed on the property sold."

It appears from the delinquent tax-roll that this property belonged to Ida J. Hawthorn, and from the return of the sheriff it appears that it was so advertised and sold; while the fact is it belonged to Ida F. Hanthorn, and was so asserted, except that "J" was used as the initial of the middle name, instead of "F." The deed recites that the sale was made in pursuance of a warrant to the sheriff to collect the delinquent taxes of Ida F. Hanthorne by the sale of her goods and chattels, and, in default thereof, by the sale of the lots in controversy, describing them; that the notice of the sale was duly given, and a certificate thereof given to the purchaser. But the name of the owner in the notice must have been the same as that on the delinquent tax-roll,—Ida J. Hawthorn,—from which it was made, and the return of the sheriff so states. The certificate of sale is not produced. Presumably it was delivered to the sheriff by the purchaser when he obtained his deed. It is not filed with the proceedings. But the name of the owner, as stated therein, must be the same as in the delinquent tax-roll and notice.

How the name came to be Ida F. Hanthorne in the sheriff's deed instead of Ida J. Hawthorn, as in the delinquent tax-list, notice, and certificate of sale, is a question not now necessary to consider, except that it does not appear to have been legally done. If the plaintiff shall be injured or lose her property thereby, the parties to the transaction may be liable, under section 109, (Laws Or. 771,) for double damages and costs of suit. To deliberately declare or recite in a deed that certain property was sold for taxes as the property of one person, when in fact it was advertised and sold as that of another, so as to make the deed conform to the assessment and the actual ownership of the property, and thereby preclude the owner from showing the truth thereabout, may prove to be a "fraudulent act" within the statute, for which a sheriff and his bondsmen would be liable.

On these facts the question arises, is a tax deed conclusive evidence, under the statute, of title in the grantee to the premises therein granted, notwithstanding it appears from the prior proceedings that the property was advertised and sold, not as the property of the owner to whom it was assessed, but as that of another? Land occupied must be assessed in the name of the owner or occupant; but unoccupied land, if the owner is unknown, may be assessed without naming any owner. Laws Or. 750, § 7; Id. 755, § 35. This property was assessed to the owner, and presumably was occupied. It appears to have been assessed to Ida F. Han-

thorn, and the taxes regularly paid by her, from 1878 to 1882, inclusive. The delinquent tax-roll on which the sale of property is made must contain the description thereof found in the assessment and tax-rolls, and the name of the person taxed therefor, if therein specified. Laws Or. 764, §§ 76, 77. And, generally, the statute relating to taxation provides or plainly indicates that, when the owner of property is known, it must be assessed in his name, or that of the occupant, if there be one, and that such name becomes and is a part of the description of the premises, and as such should be carried through all the subsequent proceedings, and particularly the notice and certificate of sale.

I am unable to say that the change of the name of the person taxed in the proceedings subsequent to the tax-roll, and prior to the execution of the deed, brings the case within either of the four grounds specified in the statute on which the deed may be avoided. If either, it must be the first one,—" Fraud in the assessment or collection of the tax." Now, fraud is not to be inferred from an act which, on any reasonable hypothesis, may have been innocently done. The change in the name may have and most likely did occur through mistake resulting from carelessness, and without any wrongful purpose or intent.

In *Kelly* v. *Herrall*, 10 Sawy. 169, 20 Fed. Rep. 364, I held that this statute in making a tax deed conclusive evidence of the title of the grantee, except in the four particulars mentioned, goes, in some respects, beyond the power of the legislature. Following the ruling in *McCready* v. *Sexton*, 29 Iowa, 356, and the comment in Cooley on Taxation (356) and Constitutional Limitations, (368,) it was there said that such a deed cannot be made conclusive evidence of the existence of any essential step or fact in the transaction, without violating the fourteenth amendment, which forbids a state "to deprive any person of property without due process of law."

The true rule on the subject seems to be that the legislature may make a tax deed conclusive evidence of the regularity of the prior proceedings as to all non-essentials or matters of routine which rest in mere expediency,—acts which need not have been required in the first place, as the affidavit of the sheriff to the delinquent list,—and which the legislature may by a curative act excuse when omitted. But the owner of property cannot be precluded from showing the invalidity of a tax deed thereto, by proving the omission of any act essential to the due assessment of the same, the levy of a tax thereon, and the sale thereof, on that account. As to the performance of these acts, and the facts necessary to constitute them, the deed can only be made *prima facie* evidence. Cooley, Tax'n, 521.

I think due and reasonable notice of the sale of property for a delinquent tax is generally regarded as necessary to the validity of such sale. Probably no state in the Union authorizes such a sale without requiring public notice of the fact to be given; and, in my judgment, such notice ought to contain the name of the owner or person to whom the property is assessed. Any one knows, who is at all conversant with the subject, that, in looking at the notice of a sale of property for delinquent taxes,

a person naturally runs his eye along the list of names, rather than the figures and abbreviations indicating the location and quantity of the property. And if he does not find his name there, or that of any one whom he may represent, he at once concludes that no property in which he is interested is included in the list.

But, admitting that the name of the owner is not a necessary part of the notice to be given of the sale of land for delinquent taxes, and that it is sufficient if the statute requires nothing more than a description of the property by metes and bounds, or a reference to the public surveys, or the lot and block, in case of town property, yet, where the statute directs the name to be published, the owner has a right to assume that it will be given. Under these circumstances the publication of the name as a part of the notice becomes material, and the omission of it, in my judgment, renders the notice invalid. But where, as in this case, the name of the owner is not only omitted from the notice, but another and different one given, the same is actually false and misleading.

It is true that "Hanthorn" and "Hawthorn" are almost identical in orthography. But they are two distinct and well-known English names, quite different in sound and suggestion; as much so as Sawyer and Sayer. Neither is it a case of the mere misspelling of a name; as Cinclair, Synclair, or Sinclare for Sinclair, or MacForson or MacPhurson for Mac-Pherson, in which the name intended is preserved in the sound, and even suggested to the eye. It is not a case of *idem sonans* by any means, but the substitution of one well-known name for that of another, which, though similar in composition, is unlike in sound and suggestion. Such a notice, in my judgment, is no notice. Indeed, it is worse; it is a false notice. A sufficient notice being a material part of a sale, and a sale being an essential part of the proceeding on which the sheriff's deed is based, the want of it may be shown to invalidate the same. And on this conclusion as to the law of the case the defendant is entitled to a finding in her favor.

On February 21, 1887, and since this case was submitted for decision, the legislature amended said section 90 of the tax law so as to make a tax deed only *prima facie* evidence of title in the grantee; and required the "party claiming to be the owner, as against the holder of the tax title," to tender and pay into court, with his answer, the amount of the taxes for which the land was sold, with interest thereon at 20 per centum per annum from the sale to the date of the deed, and the sheriff's fees for making the certificate and deed, together with any taxes the purchaser may have paid on the property, with interest thereon, for the benefit of the holder of said tax deed, his heirs or assigns, in case the same should be held invalid. On March 23, 1887, the defendant commenced a suit in equity in this court against the plaintiff herein, under section 500 of the Code of Civil Procedure, for the purpose of determining his claim to the premises; alleging that the tax deed under which the plaintiff claims title to the same is void on the grounds herein considered, and others, and brought into court and tendered him the sum of $50.60 in payment of what was due him thereon.

I have considered whether this section 90, as amended, is applicable, as a rule of evidence, to the case under consideration.    When the state sold these lots to Bennett it entered into a contract with him, the obligation of which it cannot impair by any subsequent legislation.    Const. U. S. art. 1, § 10.    But the right to a particular remedy to enforce the contract is no part of the obligation thereof.    Neither is it considered a vested right.    Therefore the legislature may modify or change the remedy at pleasure, so long as it does not, under pretense of regulating the remedy, impair the right itself.    Cooley, Const. Lim. 361.    And the rules of evidence are considered a part of the remedy, so that a party to a contract has no vested right to have a controversy concerning the same determined by the rule of evidence in force when the contract was made. Therefore the rule of evidence in force when the controversy is determined or decided, applies.    Cooley, Const. Lim. 367.    *Edwards* v. *Kearzey*, 96 U. S. 595.

Accordingly it has been held that a statute which made parties to actions competent witnesses; admitted parol evidence to modify a written contract contrary to the common law; required the purchaser at a tax sale to give notice to the occupant before applying for a deed; changed the burden of proof by making a tax deed *prima facie* evidence of title and the regularity of the prior proceedings, or the reverse; or which made a deposition taken *de bene esse*, without notice to the adverse party, *prima facie* evidence of the facts stated,—may be applied to existing causes of action.    *Rich* v. *Flanders*, 39 N. H. 323; *Gibbs* v. *Gale*, 7 Md. 76; *Hickox* v. *Tallman*, 38 Barb. 608; *Howard* v. *Moot*, 64 N. Y. 268; *Curtis* v. *Whitney*, 13 Wall. 68.

But there must be an opportunity given for investigation and trial. The legislature cannot, under pretense of prescribing rules of evidence, preclude a party from making proof of his right by arbitrarily and unreasonably declaring that, on some particular circumstance being shown by the other, the controversy is closed by a conclusive presumption in favor of the latter.    Cooley, Const. Lim. 368.

It was held in *Smith* v. *Cleaveland*, 17 Wis. 556, that a tax deed executed under a statute which made it conclusive evidence of the regularity of the prior proceedings, with certain exceptions, could not, by a subsequent statute, be reduced to mere *prima facie* evidence of such facts. The decision was based on the ground that to allow the character and effect of the deed, as a muniment of title, to be changed by the subsequent statute, would impair the obligation of the contract made by the state with the purchaser.    And no case has been shown in which there was a contrary ruling on like circumstances.    Where the deed is only *prima facie* evidence, the purchaser takes it subject to the right of any party adversely interested to overcome this presumption by proof to the contrary.    The matter is left open to investigation; and, this being so, the legislature may regulate it by shifting the burden of proof back onto the purchaser.    But to open a purchaser's title to proof of defects in the prior proceedings, when he purchased on the faith of a statute which declared his deed conclusive evidence in his favor on these points, is a

very different thing. In my judgment it impairs the obligation of his contract. See *Corbin* v. *Board Com'rs*, 3 Fed. Rep. 356.

So far, then, as the legislature had the power and by the act of 1865 did make the tax deed of the plaintiff's grantor conclusive evidence of his title, I do not think the legislature of 1887 had the power to modify it. If notice of the sale was not an essential part of the proceeding, the legislature of 1865 had the power and did make the tax deed conclusive evidence on the point. But, if the notice was necessary to the validity of the sale, then, as I have concluded, the legislature did not have the power to make the deed conclusive evidence of the fact.

In either view of the matter, the act of February 21, 1887, has no effect on the decision. In the former case, as to this deed, the conclusive effect of the act of 1865 could not be modified, and in the latter one the deed is only *prima facie* evidence at best. But I am pleased to think that the just and long-needed provision in this act, requiring a party who contests a tax title to refund the money, with interest, which has been expended in the payment of taxes for his benefit, may be applied to this transaction in the suit in equity.

It is needless to add that the supreme court of the state has not passed on the questions involved in this case, or otherwise I would have been spared the trouble of considering them. There must be a finding that the plaintiff is not the owner of the premises, or entitled to the possession of them, and that the defendant is.