CUMMINGS et al. v. CUMMINGS et al.

(Circuit Court, W. D. North Carolina. January 17, 1899.)

1. TAXATION—EFFECT OF SALE FOR TAXES—LAWS OF NORTH CAROLINA.
Under the laws of North Carolina the claim and lien of the state for taxes on real estate is in rem; and although land is in the possession of a life tenant, upon whom rests the legal duty of paying the taxes thereon, a sale for their nonpayment conveys the entire title, and not merely the life estate.

2. SAME—AUTHORITY TO EXECUTE TAX DEED—EXPIRATION OF SHERIFF'S TERM.
Under the statutes of North Carolina, a sheriff who, as tax collector, has received tax lists for collection, may sell realty, for nonpayment of

taxes charged thereon, after his term of office as sheriff has expired, and is also the proper person to execute deeds on sales so made by him; and a deed executed by his successor on such a sale, except in case of his death, as to which special provision is made, is void.

This is a suit in equity by Nellie L. Cummings and S. Alice Cummings, minors, by their next friend, R. F. Alexander, against P. A. Cummings and others, to establish rights in certain real estate.

T. H. Cobb, for plaintiffs.
Merrimon & Merrimon, for defendants.

SIMONTON, Circuit Judge. These points have thus far been decided in this case: That the trust deed executed by Mrs. Cummings to Child, trustee, purporting to be a deed of trust of the land purchased by her to secure unpaid purchase money, being the deed of a married woman, was not executed in accordance with the law of North Carolina, and was inoperative. That Child, trustee, took no power of sale thereunder. That the sale made by Doubleday, who had been substituted in lieu of Child, the deceased trustee, was also inoperative and void. That this sale was made because of the nonpayment of a note of $500 and interest, the remainder of the purchase money unpaid, charged to be an incumbrance on the estate; and that in no event could the purchase by P. A. Cummings at that sale, and his payment of the amount due, operate so as to entitle him to a conveyance in fee. He was the life tenant. He could not, by this act, deprive the complainants, tenants in remainder, of their estate; but his payment of the balance due, and the removal of the incumbrance, inured, not to his benefit solely, but to the benefit of the inheritance. That, notwithstanding the conveyance in fee to him, he remained and continued to be the tenant for life.

The lot of land has been sold for the nonpayment of the tax thereon. The question now is as to the effect of this sale. P. A. Cummings, having obtained a conveyance in fee of this lot, executed a deed of trust conveying the legal estate therein to D. C. Waddell, in trust to secure the sum of $3,000 borrowed by him from A. J. Lyman and A. B. Lyman. Subsequently he executed a second deed of trust or mortgage to these Lymans as part security for another loan of $3,000. By express terms, in both of these deeds, Cummings bound himself to pay all taxes accruing on this lot. As he only had a life estate in the lot, he could only bind the life estate. The land was listed for the taxes of 1892 in the name of P. A. Cummings. This was known by the Lymans. The tax was not paid. At the time of the listing and the nonpayment of the tax, Reynolds was the sheriff of Buncombe county, in which the land lay. His term of office as sheriff expired 1st December, 1892. He then became the tax collector. On 11th July, 1893, he offered for sale this lot of land for nonpayment of the tax, and it was bid in by J. E. Rankin, chairman, he being then chairman of the board of county commissioners. Subsequently, 1st September, 1894, a conveyance of this lot of land was made by J. H. Weaver, tax collector, to A. H. Lyman and C. E. Lyman, as assignees of the county commissioners. The complainants, who were then, and still are, minors, more than a

year after this conveyance tendered to these purchasers the amount paid by them, with all proper interest, and were by them referred to Weaver, the tax collector. They then paid to Weaver, tax collector, this amount, taking his receipt therefor. He made at the time, in the sale book, the memoranda required on the redemption of land sold for taxes. The bill has been taken pro confesso against all the defendants except A. J. Lyman and A. B. Lyman, who are in no way connected with A. H. Lyman and E. C. Lyman. The complainants contend that P. A. Cummings, the tenant by the curtesy, having neglected to pay the tax on this lot of land for so long a time that it was sold for taxes, and not having redeemed the same within one year after such sale, has forfeited his estate to the remainder-men, who have themselves redeemed the land. Acts N. C. 1893, c. 297, § 99. As tenant for life, Cummings was bound to keep down the taxes. Black, Tax Titles, § 285. When he conveyed his interest and estate under the trust deed and mortgage, he conveyed it bound by this burden. He covenanted in these deeds to pay the taxes as they accrued. By law and by deed he was quoad this lot of land the taxpayer. Recognizing this, the lot was listed in his name, with the knowledge of the Lymans. He received due notice that his tax was due and unpaid. This, too, was within the actual knowledge of the Lymans, to whom, upon inquiry, he promised that he would not neglect it. Upon his failure to fulfill the duty thus imposed on him by law, by his own deeds, and by his verbal promises, the lot was put up for sale, and was sold. Assuming, for the present, that all the proceedings leading up to this sale were regular, or that, if any irregularities existed, they have been cured, it is clear that the whole title to this lot—the fee—was forfeited and sold. The state of North Carolina has the ultimate ownership of all the land within its boundaries. These lands are held under the state subject to the payment of the taxes assessed thereon. The lien of the state therefor is in rem. The state looks to the res for the tax. If the tax be not paid, the state can sell the land. Moore v. Byrd (N. C.) 23 S. E. 968. Indeed, one reason why the life tenant is bound to keep down the tax is that he is bound to preserve the interest of the remainder-men. If the tax be not paid, the inheritance may be forfeited. So the question need not be discussed whether the life estate only has been forfeited, or the reversion left in Cummings after his deed of trust. If anything be forfeited, it is the whole estate, because the tax is assessed on the res. This, also, is clear from the terms of the act under which this lot was listed by Cummings (Acts N. C. 1891, c. 326, § 12): "Every person required to list property shall make out and deliver to the list taker a statement verified by his oath of all the property, real and personal, in his possession or under his control on 1st of June, either as owner or holder thereof." It is admitted that this lot was then in possession of Cummings, as holder or owner thereof. Has this lot of land been forfeited? The law of North Carolina requires certain things to be done by the taxpayer. Upon the failure to do these, his land is subject to the forfeiture. When these acts are not done, then the officers of the state must do certain other acts leading up to the sale, purchase, and conveyance of the land, and then the title of the former owner is gone, and the purchaser takes the title. All these are

essential prerequisites. The taxpayer must fail to do the things he should have done. The officers of the state must pursue the methods prescribed. The purchaser must conform to the line imposed on him in the acts of the legislature, otherwise the forfeiture is not complete.

The complainants contend that there was a valid forfeiture of this property, and that the rights of the purchaser were assured, subject to their right of redemption; that they have exercised this right of redemption, and that they can now get all that the purchaser was entitled to. Their rights depend, therefore, in great measure, if not altogether, on the rights of the purchaser. The vital question, therefore, is as to these rights. The law of North Carolina gives to the deed executed to the purchaser after a sale for nonpayment of taxes great and overwhelming force. So drastic is its effect that the constitutionality of the law is gravely disputed. The supreme court of that state, in perhaps its most recent decision, has avoided passing upon it. Peebles v. Taylor (1896) 24 S. E. 797, end of opinion. Be this as it may, the deed is the culminating act, the execution of the power of forfeiture, the final judgment of forfeiture, essential to the forfeiture. When a sale for nonpayment of taxes takes place, the officer authorized to make the sale gives to the highest bidder at the sale a certificate to that effect. The purchaser is not then entitled to the deed. That can only be executed upon the presentation and delivery of the certificate at any time within one year after the sale, or proof of the loss and of the contents of the certificate. Acts 1893, c. 296, § 64. The purchaser can either demand a deed or he can foreclose the lien the state has on the land for all unpaid taxes, by proceedings for foreclosure. Section 80 of the same act. And section 81 declares:

"If the owner of any such certificate shall fail or neglect either to demand a deed thereon or to commence an action for the foreclosure of the same as provided in the preceding section, within two years from the date thereof, the same shall cease to be valid or of any force whatever, either as against the person holding or owning the title adverse thereto, and all other persons, or as against the state, county and all other municipal subdivisions thereof."

When this property was listed, and the tax was assessed, Reynolds was the officer charged with the collection of the taxes, he being the sheriff of the county. His term of office as sheriff expired 1st December, 1892, before any sale of the land had been had. He offered the land for sale in July, 1893. Assuming, for the sake of argument, that the proper entry was made of the purchase in the name of the county, and that there was a proper assignment to A. H. Lyman and C. E. Lyman, a deed was executed to them by J. H. Weaver, tax collector, 1st September, 1894. The sale was properly made by Reynolds, although it was made after his term of office had expired. When the tax lists were put into his hands, he was charged with the full amount of them, and he was bound to discharge himself. He therefore could retain the list, and collect the taxes thereon. In State v. McNeill, 74 N. C. 537, the court says:

"If the sheriff is re-elected, as it happened in this case, he is then bound to collect the taxes of the preceding year, but this is by virtue of his former election, and under the responsibility of his old bond. The duty of collecting taxes is not incident to the office of sheriff, though ordinarily discharged with that office. The duty, therefore, does not terminate with the office,

·but he is bound to go on and collect the taxes after the term of his office has expired, and the sureties on his bond are liable for the moneys by him collected, or that should have been collected, after that time."

Reynolds then had the right to sell.    If he had the right to sell, he had the right to do anything to consummate the sale.    He should have executed the deed.    This clearly appears from the language of chapter 242, Act 1891, which declares that when a tax collector has made a sale, and then dies before making a deed, his successor in office shall be the proper person to make the deed.    This is the only case in which the successor in office is clothed with any such power.    It arises ex necessitate.    "Expressio unius est exclusio alterius."    If he be alive, he is the person to make the deed.    Reynolds is alive.    Certainly he was alive when this deed was made.    This being so, A. H. Lyman and C. E. Lyman have no deed; and the time for obtaining one has passed, under section 81, c. 297, Acts 1893, above quoted.    The rights of the persons holding or owning adverse title to that purported to be conveyed in the deed are not affected.    And as the tax collector has received all the tax due, and the interest thereon, the state has no claim.    There is no forfeiture.